January 27, 1978

**78-5    MEMORANDUM OPINION FOR THE
ADMINISTRATOR, DRUG ENFORCEMENT
ADMINISTRATION**

**Drug Enforcement Administration—
Supergrade Positions—Exemption From
Competitive Service**

This is in response to your inquiry raising four questions involving the interpretation of certain aspects of the Percy amendment to the Crime Control Act of 1976.

The main import of the Percy amendment, § 201 of the Crime Control Act of 1976 (Public Law 94-503; 90 Stat. 2425; 28 U.S.C. 509 note), is to except from the competitive service all positions in the Drug Enforcement Administration (DEA) which are at levels GS-16, 17, and 18 of the General Schedule, and certain positions at GS-15 ("subsection (a) positions"). Subsection (c)(2) of § 201 provides:

> (2) Effective beginning one year after the date of the enactment of this Act, an individual in a position described in subsection (a) may be reduced in rank or pay by the Administrator within the Drug Enforcement Administration if—
>
>> (A) Such individual has been continuously employed in such position since the date of the enactment of this Act, and
>>
>> (B) The administrator determines, in his discretion, that such action would promote the efficiency of the service.
>
> Any individual reduced in rank or pay under this paragraph shall be paid in accordance with subsection (d).

Under subsection (d), an employee reduced in rank or pay pursuant to subsection (c)(2) is to receive the basic pay he was receiving immediately before such reduction in rank or pay; under subsection (c)(3), however, he is denied the benefits of the veterans' preference provisions of 5 U.S.C. §§ 7512, 7701.

Questions 1 and 2 address themselves to the following issue presented by subsection (c)(2). Pursuant to that subsection the Administrator, effective 1

23

year after the approval of the statute (October 15, 1976), may reduce in rank or pay an individual in a subsection (a) position if such individual has been *continuously employed in such position* since the date of the enactment of the Act. The problem raised by Questions 1 and 2 is whether the phrase "continuously employed in such position" refers to the specific position which the employee holds at the time at which the reduction in rank or pay is effectuated, or to any subsection (a) position. In other words, does subsection (c)(2) apply to an employee only if he has been continuously employed in the same position since the date of the approval of the Act, or is it sufficient if he has been continuously employed in any subsection (a) position?

The legislative history of the Act is of little help in solving this problem. What is now § 201 was introduced by Senator Percy as an amendment to the bill during the debate on the floor of the Senate, 122 Cong. Rec. S 12434 (Daily ed., July 26, 1976). Senator Percy's explanation of the amendment contained the following statement as to its purpose:

> . . . It [the amendment] would place these DEA supervisory positions on a basis comparable to those at the FBI. Certainly there is a need for greater managerial flexibility and for the ability to move people about at one policy-making level in a law enforcement agency of this kind. *Id.*

The bill passed by the House did not contain a corresponding provision. The Conference Committee modified the text of the Percy amendment. The conference report, however, does not give any reasons for action taken by the conference except to state:

> *Drug Enforcement Administration*
>
> The Senate bill would make certain DEA positions now in the competitive service into excepted service positions.
>
> The House amendment had no parallel provisions.
>
> The conference substitute adopts a modified and more restrictive version of the Senate bill provisions. H. Conf. Rept. 94-1723, p.32.

It is our opinion that subsection (c)(2) applies if the employee has served continuously since the approval of the Act in any subsection (a) position, and he need not have served continuously in the same position. If it were otherwise, the Administrator could totally deprive an employee of his salary retention rights under subsection (d) by the expedient of transferring him from one position to another or by promoting or demoting him. As shown above, the purpose of § 201 is to enable the Administrator to exercise greater control over the policymaking positions in his agency, and to protect the salary status of those who at the time of the approval of the Act were already serving in a subsection (a) position. This does require that the employee remain frozen in the position he held at the time of the enactment of the statute if he is to keep his retention rights. Indeed, the very managerial flexibility which the Act is designed to achieve would be jeopardized by the contrary view. A considerate

Administrator may well hesitate to reassign or promote an employee if that action would result in the loss of the employee's salary retention rights.[1]

For those reasons we conclude that the requirements of paragraph (c)(2) are met if the employee held any—but not necessarily the same—subsection (a) position since the enactment of the statute.

Question 3 asks for an interpretation of paragraph (c)(3), in particular the phrase "any reduction in rank or pay (under paragraph (2) or otherwise)."

Paragraph (c)(3) reads:

> (3) The provisions of sections 7512 and 7701 of title 5, United States Code, and otherwise applicable Executive orders, shall not apply with respect to actions taken by the Administrator under paragraph (1) or any reduction in rank or pay (under paragraph (2) or otherwise) of any individual in a position described in subsection(a).

Paragraph (c)(3) removes from the protection of the Veterans Preference Act (5 U.S.C. §§ 7512, 7701) certain employees of DEA serving in subsection (a) positions. The first clause exempts actions taken under paragraph (c)(1), that is, all adverse personnel actions—removal, suspensions for more than 30 days, furloughs without pay, or reductions in rank or pay—affecting those who have served in subsection (a) positions for less than a year. Clause 2 removes from the application of the Veterans Preference Act any reduction in pay or rank (under paragraph 2 or otherwise) of any person serving in a subsection (a) position. Reductions in rank or pay under paragraph 2 affect those who have served continuously in a subsection (a) position since the approval of the Act. If the words "or otherwise" were lacking, paragraph (c)(3) would remove from the protection of the Veterans Preference Act those employees holding a subsection (a) position who have served less than a year and those who have served continuously since the approval of the Act. Veterans' preference, however, would be continued for the intermediary group, *i.e.*, those who have served for more than a year, but not since the approval of the statute. There appears to be no rational basis for retaining veterans' preference for that group but to deny it to those who have served for shorter or longer periods. Nor is there anything to indicate that Congress intended to achieve that result. It must be assumed that the words "or otherwise" were designed to extend the denial of veterans' preference protection to those who fall into that intermediary group. The import of the second clause of paragraph (c)(3), therefore, is to deny veterans' preference to any subsection (a) employee who is reduced in rank or pay, regardless of his length of service.[2]

Question 4 asks whether the requirement of continuous employment in subsection (a) position within the meaning of paragraph (c)(2) has been met where a person has been selected for such a position by the Administrator and has been acting in that position prior to the approval of the Act, but where the

---

[1] Indeed, he might even be reluctant to demote if that action would have the additional result of depriving the employee of his retention rights.

[2] We realize that there is a certain overlap between clauses (1) and (2) of paragraph (c)(3) since clause (1) also covers the reduction in rank or pay of those who have served for less than a year.

approval of the Civil Service Commission to the appointment was given after that date. The answer to this question affects the employee's entitlement to retention pay, which presupposes that he has served continuously in a subsection (a) position since the approval of the Act.

This question must be answered in the negative. Pursuant to 5 U.S.C. § 3324, an appointment to a position in grades GS-16, 17, or 18 may be made by an agency only on the approval of the qualifications of the proposed appointee by the Civil Service Commission. An official therefore cannot be employed in such a position prior to that date. Service in an acting capacity is merely a "detail" (*see* 5 U.S.C. Ch. 33, Subchapter III), and a person cannot receive the compensation in addition to that of his regular pay for serving in an acting capacity in another position. 5 U.S.C. § 5535. We conclude that formal appointment to a position in GS-16, 17, or 18 pursuant to Civil Service Commission approval is a prerequisite for fulfilling the requirement of continuous employment since the date of the approval of the Act and the concomitant entitlement to retention pay.

Appointment to a position in the SR category[3] and in GS-15 does not require prior approval by the Civil Service Commission; hence, there would appear to be no need for "acting" details in connection with those positions. We therefore assume that the fourth question does not arise with respect to such appointments. If it does, the answer will depend on the specific circumstances involved.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[3] The SR category covers the four supergrade positions created by § 3(b) of Reorganization Plan No. 1 of 1968.